# JOHN B. BLANDIN ET AL. *v.* JOSHUA SILSBY.

## *Mortgage. Betterments.*

1. In 1874 the defendant mortgaged to the orator. In 1877 the orator obtained a decree of foreclosure which became absolute March 23, 1878. H. held a prior mortgage of the same premises, and April 27, 1878, the orator quit-claimed to H. upon condition that he should dispose of the premises and after satisfying his own claim, pay the balance to the orator. Instead of selling the premises, H. suffered the defendant to remain in possession until 1886, when the defendant paid the amount due on H's mortgage and received a quit-claim deed of the premises. At the time of this payment the defendant had notice of the conditions under which H. held his title from the orator. *Held,* that the orator's mortgage was a valid lien upon the premises against the defendant's title.

2. Further, that the defendant had no claim for improvements made before he obtained knowledge of the conditions upon which H. received his deed from the orator.

This was a suit in chancery, and was heard at the General Term, 1887, and remanded to the Court of Chancery for the county of Essex with the mandate which appears in the opinion. At the March term, 1888, the orator filed his amended bill to which the defendant made an amended answer. The cause was further heard at the September term, 1888, upon the amended bill, amended answer, and the master's report. POWERS, Chancellor, decreed that the mortgage of 1874 still existed as a valid lien against the premises, and granted foreclosure of the same. The defendant appealed.

No copy of the original bill and answer has been furnished the reporter. The amended bill alleged that the defendant Silsby in 1874 mortgaged to the orator certain premises, and that at the March term, 1877, of the Essex County Court of Chancery, he brought a petition to foreclose said mortgage and obtained a decree, which became absolute against the defendant March 23, 1878. That the premises were encumbered by a prior mortgage to one Howe, and that an arrangement was concluded between the orator and Howe in accordance with which

the orator conveyed the premises by deed quit-claim to Howe on the 27th April, 1878, and the following agreement was signed by them :

"This agreement made and concluded this 27th day of April, A. D. 1878, by and between John B. Blandin of the first part and Henry Howe of the second part, witnesses : That whereas the said Blandin has this day quit-claimed to the said Howe all of his interest in the real estate mortgaged to the said Blandin by Joshua Silsby, except that part of lots Nos. 15 and 17 in the third division, which was conveyed to Joshua Silsby by Dennis Thomas and wife, May 10, 1870 ; now, therefore, in consideration of said quit-claim deed, the said Howe agrees that he will dispose of said quit-claimed premises to the best advantage in the judgment of the said Howe, and after satisfying a certain claim which he, the said Howe, holds against Joshua Silsby, secured by a mortgage from said Silsby to said Howe on the same premises, amounting to about $4,357, also all taxes due or to become due on said premises, and the cost of foreclosing said. Blandin mortgage, which amounts to $29.38 ; if anything shall remain of the avails of said premises the said Howe is to pay the same to said Blandin."

The bill alleged that this quit-claim deed was only for the purpose of allowing Howe to control the premises and realize what he could from their sale in accordance with the above agreement, and upon no other consideration.

That Howe suffered the defendant to remain in the occupancy of the premises until April, 1879, when he deceased. That one Wright was appointed and acted as the administrator of Howe's estate, and that he suffered the defendant to continue in the occupation of the premises, as he had been in the lifetime of Howe, until 1886, when Wright conveyed the premises to the defendant by deed quit-claim, taking back a mortgage to secure the balance due the estate, which mortgage had been fully paid.

The bill further alleged that no part of the orator's original mortgage had ever been paid ; that the defendant had full knowledge of the arrangement under which Howe took and held the title to the premises, and prayed that the mortgage of the orator might be foreclosed against the defendant.

The amended answer of the defendant set forth that subsequent to the spring of 1879, and while he had no knowledge

whatever of the agreement between Howe and the orator, he made extensive improvements to the premises, for which he ought in equity to be allowed.

The master's report, made as the pleadings originally stood, found the facts as to the mortgage, the decree, the execution of the quit-claim deed to Howe and the agreement between Howe and the orator substantially as represented in the orator's bill.

It appears that Howe had received a quit-claim deed of these mortgaged premises from the defendant before he received his deed from the orator. With reference to these two deeds and the relation in which Howe stood to the parties in virtue of them, the master found :

" At the time that Blandin executed the quit-claim to Howe a written agreement was executed between Howe and Blandin in relation to the lands covered by said quit-claim deed, and expresses what the parties intended to enable Howe to dispose of the lands, and that the avails should be divided in the order of their mortgages.

"On the 3d day of April, 1878, Joshua Silsby executed a quit-claim deed of said mortgaged premises to Henry Howe, except the Thomas place, but said deed was not recorded till May 1, 1878, and Blandin had no knowledge of said deed when he executed the quit-claim deed to Howe on the 27th April.

In relation to the deed of April 3, 1878, Silsby testified as follows : ' I deeded to Howe to save his foreclosing, and to fix it so as to save us a home. I expected to have a right to redeem. I did not know how they managed about Blandin's mortgage. Howe said he would give me a good showing and all the time I wanted. If I paid up his claim he was to deed back to me.'

" Silsby remained in the possession of all the mortgaged premises except said Thomas place, with the assent of Howe, and has so continued to the present time, and I find that it was fully understood between Howe and Silsby that Silsby was to have the right to redeem Howe's mortgage and have a re-conveyance from Howe when said mortgage debt was paid. There was no evidence that anything was said between Howe and Silsby about the Blandin mortgage. Silsby continued to carry on the business of getting lumber on the mortgaged premises and manufacturing the same, and Howe aided him some with money and credit till his death in the spring of 1879. Before Howe died

he had sold the machinery from the grist-mill on the premises, and applied the pay for it towards his debt.    Blandin assented to this sale.

"Soon after Howe's death, T. Nelson Wright was appointed his administrator, and was also appointed town clerk of Lunenburgh to succeed Howe.

"Wright had been informed by Howe in his lifetime that he had agreed to allow Silsby to redeem the mortgaged premises, and Wright, after he became administrator, allowed Silsby to remain in possession and carry on the lumber business thereon, and with the funds of the estate aided Silsby in his lumber operations.

"On the 16th day of February, 1886, there was a settlement between Silsby and Wright as administrator of Howe, and there was found to be in Wright's hands the sum of $3,124.29, the avails of the sales of lumber, etc., under the contracts aforesaid, and this sum was applied on Howe's mortgage debt, and Wright as administrator of Howe executed a quit-claim deed of the mortgaged premises to Silsby, and Silsby at the same time executed new notes for about $300, the balance of the Howe mortgage debt, and executed a new mortgage to Wright, administrator, etc., of the same premises to secure the new notes.

"In July, 1886, the mill on the mortgaged premises was burned. It was insured for the benefit of this new mortgage in a sum sufficient to pay the same, and these new notes were fully paid by said insurance money."

In relation to notice to the defendant of the orator's interest in the premises, the master reported:

"The quit-claim deed between Howe and Blandin and the contract between them of April 27, 1878, were all left in the hands of Howe as town clerk on the day they were executed.    Howe made an entry on the contract as follows: 'Received for record April 27, 1878.'    For some reason it was not then recorded by Howe.

"Shortly before March 1, 1880, Blandin spoke to Wright, then town clerk, about it, and Wright, finding it had not been recorded, examined among Howe's papers for it, and found and recorded it about March 1, 1880.    He then had full notice of it.    As to the notice to Silsby of the quit-claim deed from Blandin to Howe, and of the contract between them, Silsby testified as follows: 'I don't recollect seeing or hearing about the deed'

from Blandin to Howe, and of the contract between them. I might have known both, but don't recollect that I did. I did not know what had become of Blandin's debt—he said nothing about it to me.'

"It was conceded that Blandin never said anything to Silsby about his claim, but he did make inquiries of Wright in regard to it, and inquired of Wright if he had said anything to Silsby about it, and Wright said he had not, for fear Silsby would be discouraged by it. Wright, finding that Blandin was insisting that he had a valid claim either against Howe's estate or the mortgaged premises, in the summer of 1885 consulted counsel about the matter and obtained legal advice as to the course he should be safe to take. He then informed Silsby of all the details of the contract between Blandin and Howe, and that he was advised that Blandin had no claim against Howe's estate; that if he had any claim that it was on the mortgaged premises; that he was advised that he could not safely give a warranty deed when Howe's mortgage was paid, and that he should give only a quit-claim deed, so that when Silsby settled with Wright and applied the money in Wright's hands on the Howe mortgage and accepted a quit-claim deed from Wright, and gave his new notes and mortgage for the balance, and when he paid them he had full notice of the contract betwen Howe and Blandin, and of Blandin's claim under it.".

*Ossian Ray*, for the orator.

*Bates & May*, for the defendant.

The opinion of the court was delivered by

TYLER, J. This cause was heard at the General Term, 1887, upon the bill, answer and master's report, and the following mandate was made and sent to the Court of Chancery:

### MANDATE.

The quit-claim deed from Blandin to Howe and the written contract of the same date between said parties are one transaction. Although in form the legal title, so far as Blandin's interest was concerned, was then vested in Howe, still in equity Howe was a trustee, and any one purchasing from him, with notice that he held the title in trust, would take the same clothed with the same trust.

Silsby owes, and never has paid, the Blandin mortgage. He had no right to suppose it extinguished, as he never paid it to any one, and before he settled with Howe's administrator he had actual notice of Blandin's rights as between him and Howe. Harris has an interest in this cause and is a proper party. Howe's estate has no interest, and so need not be represented. The orators are entitled, upon an amendment of their bill, as the case now stands, to have the Blandin mortgage treated as on foot and for a foreclosure.

The bill in its present form will not admit of a decree for foreclosure, as it proceeds upon the basis that the defendant has no legal or equitable interest, but it may be amended, and the decree is *pro forma* reversed and cause remanded for the Court of Chancery to allow such amendments of the bill as counsel may be advised are needed, and upon such terms as that court may impose.

For the Court,                    H. HENRY POWERS, *Judge.*

At the March Term, 1888, of that court, an order was made allowing amendments to the bill and answer, pursuant to the mandate, and at the next September Term a decree was made for the orator, upon the amended pleadings and the report, for the amount of the Blandin mortgage. The cause comes here again for revision upon the defendant's appeal from that decree.

The bill as amended prays for a foreclosure of the defendant's interest in the mortgaged premises. No new matter of defense is set up in the amended answer sufficient to bar the orator of his right to a decree ; therefore,

*The decree is affirmed and cause remanded.*